

UNITED STATES DISTRICT COURT
FILED
SEP 0 3 2024
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

1

2

3

4

5

6

7

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

8

9

UNITED STATES OF AMERICA
*ex rel*. [SEALED],

No.:

Plaintiff,

**FALSE CLAIMS ACT
COMPLAINT**

10

11

– Against –

and

12

[SEALED],

**JURY DEMAND**

13

Defendant.

**[TO BE FILED UNDER SEAL]**

14

15

**FILED IN CAMERA AND UNDER SEAL UNDER
31 U.S.C. § 3730(b)(2)
DO NOT POST ON ECF
DO NOT PUT IN PRESS BOX**

16

17

18

19

Stephen A. Teller, WSBA #23372
Teller Law
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969

20

21

22

*Counsel for Plaintiff Relator*

23

24

25

**COMPLAINT** and **JURY DEMAND - 1**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DANIEL FOSTER, <br><br> Plaintiff, <br><br> v. <br><br> MONOFRAX, LLC, a Delaware Corporation, MONOFRAX HOLDING GmbH, a foreign corporation, <br><br> Defendants. | No <br><br> **FALSE CLAIMS ACT COMPLAINT** and **JURY DEMAND** <br><br> **[FILED UNDER SEAL]** |

Relator hereby brings this action on behalf of the United States of America against two closely affiliated corporations for violation of the False Claims Act. Defendants submitted materially false applications for a second-draw Paycheck Protection Program ("PPP") loan, for which Defendants did not qualify, and associated forgiveness of this loan.

Defendants Monofrax, LLC and Monofrax Holding GmbH (collectively "Monofrax" herein) were holdings of Callista Private Equity, a private equity firm based in Munich, Germany. Monofrax, LLC develops, builds, and sells equipment and materials for fused cast high-temperature manufacturing and fabrication. Its affiliate, Monofrax Holding GmbH, is an intermediate holding company. In April 2020, Monofrax, LLC received a first-draw PPP loan of $2.5 million under the business name "Monofrax, LLC". In January 2021, one of or both Defendants fraudulently applied for and received a second-draw PPP loan of $1.86 million under the business name "Monofrax Holding GmbH". In June 2022, one or both Defendants fraudulently applied for and received full forgiveness of the loan amounts from the Small Business Administration. During the relevant time frame Callista sold Monofrax to Compagnie de Saint-Gobain S.A., a French industrial conglomerate.

**COMPLAINT and JURY DEMAND - 2**

**Teller Law**
300 Lenora St. #1471
Seattle, WA  98121
(206) 324-8969  steve@stellerlaw.com

In its initial application for the second-draw loan and later application for loan

forgiveness, Monofrax ignored clear instructions to include the employees of its affiliates,

namely Callista Private Equity and its global portfolio of managed companies, and later

Compagnie de Saint-Gobain S.A, (regarding forgiveness of the second draw loan) to determine

its eligibility. In doing so, Monofrax fraudulently omitted the employees of its global affiliates

and understated its true size to the United States Government, which relied on said statement.

Monofrax falsely qualified for the PPP with 130 employees when, based on the SBA's bold-

font instructions, its affiliated group actually had 2,700 workers or more.

## PARTIES

### A.  Monofrax, LLC

1.      Defendant Monofrax, LLC is a Delaware Corporation.  Its primary US address

1870 New York Avenue, Falconer, NY 14733, United States.

2.      Defendant's business involves the production and supply of glass-making

equipment and other high-temperature fused casting.  On information and belief, it is a fully

owned subsidiary of Monofrax Holding GmbH ("Monofrax Holding" herein) with headquarters

currently listed at Glasstraße 1, 52134 Herzogenrath, Germany.

3.      Monofrax, LLC is, and its owners and employees are, believed to be responsible

for applying for the SBA loan referenced herein, seeking forgiveness of this loan, and for all

other acts alleged herein which were taken by the corporations and individuals acting for

its/their benefit and/or on its/their behalf.

### B.  Monofrax Holding GmbH

4.      Defendant Monofrax Holding GmbH is a company formed under the laws of

Germany, with headquarters currently listed at Glasstraße 1, 52134 Herzogenrath, Germany.

COMPLAINT and JURY DEMAND - 3

5.      It is presumed to be the intermediate owner of Defendant Monofrax, LLC, and is not believed to actively engage in any business.

6.      Monofrax Holding is, and its owners and employees are, believed to be responsible for applying for the SBA loan referenced herein, seeking forgiveness of this loan, and for all other acts alleged herein which were taken by the corporations and individuals acting for its/their benefit and/or on its/their behalf.

### C.      Relator – Daniel Foster

7.      Mr. Foster is an American citizen who has investigated Defendants. Based on information he discovered in English and German-language documents, he realized that Monofrax and its affiliates employed more workers than the company claimed its second-draw PPP loan application.

### JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1345 because this action involves a federal question and the United States is plaintiff. This Court also has subject matter jurisdiction under 31 U.S.C. § 3732(a).

9.      The Court may exercise personal jurisdiction over Defendants under 31 U.S.C. § 3732(a). The Court has personal jurisdiction over Defendants because they transact business, or seek to transact business, within this district, as evidenced by the location of Monofrax's headquarters in Falconer, New York, within this district.

10.    Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) & (c) because Defendants transact business or can be found within this district.

11.    No allegation in this Complaint is based solely on a public disclosure of allegations or transactions in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, administrative, or General Accountability

**COMPLAINT and JURY DEMAND - 4**

Office, or other Government report, hearing, audit, or investigation; or from the "news media." Rather, Relator is an original source.  To the extent there has been such prior disclosure, Relator caused that disclosure to be made by his report to the government, and remains an original source.

12.    Under 31 U.S.C. § 3730(b)(2), this Complaint shall be filed in camera and under seal and shall not be served on Defendant until the Court so orders.

**FACTS**.

**I.    Governing Law**

    **A.    `The Federal False Claims Act**

13.    The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval," "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," or conspires to do so.  31 U.S.C. § 3729(a)(1).

14.    As of the date of filing, any person found to have violated these provisions is liable for a civil penalty of not less than $13,508 and not more than $27,018 for each such violation, plus three times the damage sustained by the Government.

15.    The FCA imposes liability where conduct is knowing or is "in reckless disregard of the truth or falsity of the information."  The law is clear that "no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b)(1).

16.    The FCA also broadly defines a "claim" to include "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that - … is made to a contractor, grantee, or other recipient if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest …." 31 U.S.C. § 3729(b)(2)(A).

**COMPLAINT and JURY DEMAND - 5**

**Teller Law**
300 Lenora St. #1471
Seattle, WA  98121
(206) 324-8969  steve@stellerlaw.com

17.    Liability also attaches for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government" 31 U.S.C. § 3729(a)(1)(G).

18.    The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to sue on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any defendant. The complaint remains under seal while the Government conducts an investigation of the allegations and determines whether to intervene. 31 U.S.C. §3730(b).

19.    Relator alleges that the False Claims Act was violated in connection with Defendants' application for a Paycheck Protection Program loan and application for loan forgiveness when Defendants violated the size rules of said Program by ignoring its affiliates' employees, obtaining funds from the Small Business Administration to which they were not entitled.

**B.    The Paycheck Protection Program**

20.    The Paycheck Protection Program ("PPP") is the United States Government business loan program established in 2020 through the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to help certain businesses, self-employed workers, sole proprietors, nonprofit organizations, veterans' organizations, and tribal businesses to continue employing and paying their workers. The program was administered by the U.S. Small Business Administration ("SBA").

21.    The PPP allowed qualified entities to apply for low-interest private loans to pay for their payroll and certain other operating costs. Under the PPP, the allowable amount of a

**COMPLAINT and JURY DEMAND - 6**

**Teller Law**
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

loan was largely calculated based on the borrowing entity's average monthly payroll costs for

the prior 12 months or prior calendar year (2019) multiplied by 2.5.[1]

22.     The PPP loan was intended to be used to cover only payroll costs, rent, interest,

and utilities.

23.     PPP recipients could later apply to have their loans partially or fully forgiven, if

they kept employee counts and employee wages stable.  The SBA would pay off forgiven loan

amounts to the lender, constituting income to the program participants.  False statements related

to loan and forgiveness applications meant income to Defendants from the SBA through the

lender.

24.     The Paycheck Protection Program was reauthorized and extended in late 2020 to

allow loan recipients to seek a "second draw" loan if they met certain criteria.  Among other

requirements, businesses could receive a second draw loan if they had experienced a reduction

in gross receipts during the first, second, or third quarter of 2020 as compared to that quarter in

2019, and, combined with their affiliates, employed 300 or fewer workers.  Like first draw

loans, second draw loans could also be forgiven if the appropriate criteria were met.

25.     The deadline for entities to apply for a first draw PPP loan was initially June 30,

2020, which was later extended to August 8, 2020, and the second draw loan deadline was

March 31, 2021.  The Program ended on May 31, 2021.[2]

---

[1] *See* How to Calculate Maximum Loan Amounts – by Business Type, U.S. Small Business
Administration, (Jun. 26, 2020) https://www.sba.gov/sites/default/files/2020-06/How-to-
Calculate-Loan-Amounts-508_1.pdf (last visited September 7, 2022).

[2] *See* Paycheck Protection Program, U.S. SMALL BUSINESS ADMINISTRATION,
https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-
program (last visited Dec. 9, 2021).

**COMPLAINT** and **JURY DEMAND - 7**

26.    The PPP was added under Section 1102 of the CARES Act by amending Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a) *et seq.*, which temporarily permitted the SBA to guarantee 100 percent of the PPP loans.

27.    Section 1106 of the CARES Act, which also amended Section 7(a), further provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

28.    The SBA also often specifically warned potential borrowers that civil and criminal liability could attach to false applications. *See e.g.,* 85 Fed. Reg. 20811 at 20814 (April 15, 2020).

29.    Defendants were on notice from SBA and likely from their own bank that they had obligations to carefully review eligibility before applying, and yet they knowingly or recklessly disregarded knowledge of ineligibility and/or their duty to know.

### *i.    Counting Employees*

30.    The PPP loan program was designed and intended to benefit *small* businesses, and thereby to facilitate continued employment when funds might not otherwise be available to keep the economy going during the pandemic.

31.    Pre-existing SBA regulations defined how to count the number of employees. As applied to the PPP the method was by averaging the number of employees by month for a period preceding the loan application, or in the calendar year 2019. See e.g., 13 C.F.R. 121.106 (b).

32.    Additionally, 13 C.F.R. 121.106 (a) states:

(a) In determining a concern's number of employees, SBA counts all individuals employed on a full-time, part-time, or other basis. This includes employees obtained from a temporary employee agency, professional employer organization or leasing concern.

COMPLAINT and JURY DEMAND - 8

33.     SBA regulations make clear that it is the average number of employees of the concern that is used (including both domestic and any foreign affiliates).  13 C.F.R. 121.106(b)(1).  The CFR states that the average should be based on the preceding 24 calendar months, although other SBA guidance indicates a 12-month period may be used for PPP loans. See, e.g., See "PAYCHECK PROTECTION PROGRAM LOANS Frequently Asked Questions (FAQs)" No. 2; FAQ No. 14.

34.     For the purpose of determining eligibility, guidance provided by the SBA generally advised borrowers they were eligible if, combined with their affiliates, using these methods they counted 300 or fewer employees.

35.     Monofrax and its affiliates at Callista had a combined total of approximately 2,700 employees. Saint-Gobain is even larger.  Monofrax was therefore ineligible for its second-draw PPP loan.

### ii.    *Affiliation Rules Relevant to the PPP*

36.     Under the SBA affiliation rules, all employees of affiliated entities under the same ownership or control "count" towards the employee limit. See "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM"[3] which references affiliation based on ownership or management. Regarding ownership, it states "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity".  Regarding management control, it states, "Affiliation arises where the CEO or President of the applicant concern (or other officers,

---

[3]  See https://www.sba.gov/document/support-affiliation-rules-paycheck-protection-program

**COMPLAINT and JURY DEMAND - 9**

**Teller Law**
300 Lenora St. #1471
Seattle, WA  98121
(206) 324-8969  steve@stellerlaw.com

managing members, or partners who control the management of the concern) also controls the management of one or more other concerns."

37.    Under 13 C.F.R. 121.106 (b)(4) not only are the business's employees counted, but so are employees of any closely affiliated businesses.

38.    Section 121.103 includes the following:

(1) Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists.

(2) SBA considers factors such as ownership, management, previous relationships with or ties to another concern, and contractual relationships, in determining whether affiliation exists.

(3) Control may be affirmative or negative. Negative control includes, but is not limited to, instances where a minority shareholder has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.

(4) Affiliation may be found where an individual, concern, or entity exercises control indirectly through a third party.

13 CFR §121.103(a).

39.    Additionally,

(e) Affiliation [may be] based on common management. Affiliation arises where one or more officers, directors, managing members, or partners who control the board of directors and/or management of one concern also control the board of directors or management of one or more other concerns.

(f) Affiliation [may be] based on identity of interest. Affiliation may arise among two or more persons with an identity of interest. Individuals or firms that have identical or substantially identical business or economic interests (such as family members, individuals or firms with common investments, or firms that are economically dependent through contractual or other relationships) may be treated as one party with such interests aggregated. Where SBA determines that such interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate.

13 CFR §121.103(e) and (f).

**COMPLAINT and JURY DEMAND - 10**

**Teller Law**
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

40.     Additional affiliation rules regarding ownership are set forth at 13 C.F.R. §

121.301(f) following the reference that "The size of the applicant combined with its affiliates

must not exceed the size standard designated ..." See 13 C.F.R. § 121.301(a)(2).

41.     On May 5, 2020, the SBA issued FAQ No. 44, addressed the affiliation rules,

emphasizing that those in 13 C.F.R. § 121.301(f) applied to PPP loans and that for the purposes

of determining eligibility, all affiliate employees must be counted, including employees of

foreign affiliates. Question 44 follows:

> ***Question***: *How do SBA's affiliation rules at 13 C.F.R. 121.301(f) apply
> with regard to counting the employees of foreign and U.S. affiliates?*
>
> ***Answer***: *For purposes of the PPP's 500 or fewer employee size standard
> (or 300 employee size standard for Second Draw PPP Loans and certain
> entities for First Draw PPP Loans), **an applicant must count all of its
> employees and the employees of its U.S and foreign affiliates**, absent a
> waiver of or an exception to the affiliation rules. 13 C.F.R. 121.301(f)(6).
> Business concerns seeking to qualify for a First Draw PPP Loan as a
> "small business concern" under section 3 of the Small Business Act (15
> U.S.C. 632) on the basis of the employee-based size standard must do the
> same.*

See "PAYCHECK PROTECTION PROGRAM LOANS Frequently Asked Questions (FAQs)

as of May 13, 2020" [emphasis added].

42.     Also in May 2020, the SBA issued an interim final rule in the Federal Register at

Vol. 85 N. 99 (May 21, 2020) at p. 30835 regarding 13 CFR Parts 120 and 121, in which it

confirmed the applicability of foreign affiliation rules to the PPP, "The fact that an applicant

might be eligible for a PPP loan if it has 500 or fewer U.S. employees does not mean that the

applicant is not also subject to the other requirements applicable to the PPP. ... If an applicant,

together with its domestic and foreign affiliates, does not meet the 500-employee [maximum] or

other applicable PPP size standard, it is not eligible for a PPP loan.".

**COMPLAINT and JURY DEMAND - 11**

43.    At 13 CFR § 121.103, the SBA described how it determines whether companies are closely enough affiliated such that both companies' employees and where applicable, revenue and net worth, should be aggregated for eligibility purposes.  See, e.g., 13 CFR §121.301.

44.    In reference to the second draw loan and forgiveness, Defendants omitted their affiliations when applying for a PPP loan and loan forgiveness, constituting fraud.

### iii.    *Specific Instructions Regarding Affiliation on the Second-Draw Loan Application*

45.    While the nominal maximum (other than industry-related exceptions) for the first draw loan was 500 employees, small businesses could have a maximum of only 300 employees for the second-draw program.

46.    Defendants were on notice from the application itself that they needed to review the meaning of "affiliates" before certifying the accuracy of the application.

47.    To avoid possible confusion among borrowers, the SBA modified the second-draw loan application form to prominently display instructions regarding the affiliation rules in large font. These instructions, adjacent to the field where applicants should list their number of employees, clearly state that the total number of employees, including affiliates, may not exceed 300.  Specifically, next to "Number of Employees" the form field states, "(including affiliates ….)"

48.    When submitting its second-draw application (Form 2483-SD), Monofrax would have had to make the following good faith certification regarding its headcount (emphasis added):

> The Applicant, **together with its affiliates** (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) employs no more than 300 employees; or (3) if NAICS 72, employs no more than 300 employees per physical location; (4) if a news organization that is majority owned or

COMPLAINT and JURY DEMAND - 12

*controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 300 employees per location.*

Second-draw application (Form 2483-SD) [emphasis added].

49.     During both rounds of the PPP and associated forgiveness periods, lenders typically went to great lengths to educate their customers about PPP rules and regulations. Text alerting borrowers to important SBA and Treasury Department IFRs, CFR's and FAQ's and other guidance was contained on websites, promissory notes, and application forms and certifications managed and controlled by lenders.

50.     Finally, the forgiveness application form includes the following above the signature line, "The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application."

51.     To aid borrowers in understanding the relevant rules, the SBA also made all PPP application forms and instructions available in several foreign languages, including German.[4]

52.     Even assuming Defendants recklessly did not read the PPP application or SBA regulations (including those referencing affiliations), information from Defendants' bank should have informed them of their ineligibility and/or the requirement to read and comply with the affiliation rules.

## II.     The Parent Corporations

### C.     Callista Private Equity GmbH

53.     Callista Private Equity GmbH ("Callista") is a company organized under the laws of Germany. It is a "turnaround" private equity firm. Its business involves taking direct

---

[4] https://www.sba.gov/document/sba-form-2483-sd-ppp-second-draw-borrower-application-form (see "Translations" links and available form downloads).

**COMPLAINT and JURY DEMAND - 13**

control of struggling industrial companies, restructuring them to improve operational efficiency, and "flipping" them at a profit within just a few years. It is privately owned with headquarters in Munich, Germany, at Steinstr. 48, 81667 München.

54.    On information and belief, Callista owned and controlled Monofrax LLC and Monofrax Holding when it applied for its second-draw PPP loan, then sold Monofrax to Saint-Gobain before the submission of a forgiveness application for the loan.

55.    Olaf Meier and Marc Zube are the founding partners of Callista Private Equity, which owned and controlled the Monofrax companies at the relevant time. Records indicate Meier was directly involved in management of Monofrax. Callista openly states that it takes an active role in the management of its portfolio companies, which it normally takes a majority stake in, and even has an "operations team" to assist in turnarounds.

56.    Records indicate that Olaf Meier and Marc Zube maintained a similar level of control at other companies owned by Callista.

**D.    Compagnie de Saint-Gobain S.A**

57.    Compagnie de Saint-Gobain S.A (Saint-Gobain) is a French multinational corporation specializing in the production and distribution of construction materials, including glass, ceramics, and high-performance materials. Saint-Gobain has its headquarters at Tour Saint-Gobain, 12 Place de l'Iris, 92400 Courbevoie, France.

58.    Compagnie de Saint-Gobain S.A is publicly traded on the French Stock market and is one of the 500 largest companies in the world. Its 2022 revenue was over € 51 billion.

59.    On April 20, 2022, Callista announced the sale of Monofrax to Saint-Gobain. According to the announcement, Callista and the Monofrax management team were able to successfully restructure the company and bring it back to sustainable profitability as of early 2019.

**Teller Law**
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969 steve@stellerlaw.com

60.    The April 20, 2022, transaction date is prior to June 22, 2022, the on which Monofrax is believed to have sought forgiveness of its second-draw loan.

61.    In its 2022 annual report, Saint-Gobain announced the same transaction and listed a closing date of April 20, 2022.  Saint-Gobain is assumed to have taken control of Monofrax LLC at this time.  Monofrax Holding GmbH did not update its German corporate records to reflect the management change until August 3, 2022. However, corporate records are not always updated in a timely fashion. There is no reason to believe that Saint-Gobain did not take control of Monofrax Holding GmbH alongside Monofrax LLC in April 2022.

62.    At all relevant times, the Monofrax companies were affiliated with much larger entities and were too large for the second draw loan size limits.

### III.    The Second Draw Loan and Forgiveness

63.    Despite clear guidance it was ineligible, Monofrax applied for and received a second-draw PPP loan of $1,838,971 on January 21, 2021 (loan number 2797048302). The SBA also paid a lender processing fee of $55,169 to Pathward National Association in relation to this loan.

64.    For reasons unknown, the German corporation "Monofrax Holding GmbH" is listed as the borrower name for the second-draw loan. In contrast, Monofrax's first-draw loan shows a borrower name of "Monofrax, LLC." Both loans list the same address of 1870 New York Avenue in Falconer, New York.

65.    There was no requirement for second-draw borrowers to use the same business name as on their first-draw applications. The business Employer Identification Number (EIN) likely would have had to remain the same. Borrowers could generally also change the bank account into which PPP funds were deposited. However, a diligent lender likely would not allow PPP funds to be deposited into a third-party account bearing a name other than that of the

COMPLAINT and JURY DEMAND - 15

Teller Law
300 Lenora St. #1471
Seattle, WA  98121
(206) 324-8969  steve@stellerlaw.com

borrower. Unfortunately, this raises the possibility that Monofrax Holding GmbH may have transferred the PPP funds directly to itself.

66.     As referenced above, the SBA modified the second-draw loan application form to prominently display instructions regarding affiliation in large font. These instructions, adjacent to the field where applicants should list their number of employees, clearly state that the total number of employees, including affiliates, may not exceed 300. Monofrax could not have completed its loan application without seeing these instructions.

67.     Monofrax chose to ignore the clear instructions on the second-draw application and instead of including the approximately 2,700 employees of its affiliate group, understating its headcount by only listing 130 workers employed in the United States.

68.     Later, in their loan forgiveness application, Monofrax Holding once again falsely attested to meeting the eligibility requirements for the program.

69.     In light of the SBA's previously announced policy clarification on foreign affiliation and the very clear instructions provided in the second-draw application, Monofrax's application for a second-draw loan and subsequent application for loan forgiveness at a minimum meet the recklessness standard of scienter, supporting a damages multiplier.

70.     Defendants improperly received loan forgiveness of $1,864,364 on June 17, 2022.

A.     **Monofrax Knew It Had Too Many Employees**

71.     Monofrax's second draw loan and forgiveness were obtained by reckless indifference or knowingly false certifications regarding size.

72.     The False Claims Act defines knowledge to include (1) actual knowledge, (2) deliberate ignorance of the truth or falsity of the information, or (3) reckless disregard of the truth or falsity of the information.  31 USC § 3729(b)(1).

COMPLAINT and JURY DEMAND - 16

**Teller Law**
300 Lenora St. #1471
Seattle, WA  98121
(206) 324-8969  steve@stellerlaw.com

73.    Monofrax ignored clear instructions within the PPP application forms on how it/they should count employees to determine eligibility for the PPP. In both application for the loan and loan forgiveness, Monofrax ignored SBA's instructions, and ignored other information and resources available that clearly state the company was ineligible.

74.    The second draw loan application form states "Number of Employees (including affiliates, if applicable; may not exceed 300 unless "per location" exception applies)."

75.    It also states "I certify that ... The Applicant, *together with its affiliates* ... employs no more than 300 employees ...." [emphasis added]

76.    No applicable exception or adjustment applies which could change this maximum number of employees for Defendants' second draw loan.

77.    The forgiveness application form includes the following above the signature line, "The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application." Thus Defendant was on notice that its first draw loan application was made in violation of the affiliation rules.

78.    On information and belief, Monofrax's bank also provided information and encouragement to review, and/or required certifications of compliance with all SBA rules, including the foreign affiliation rules.

79.    In its forgiveness application, Monofrax was required to certify and did certify falsely that the documents and information submitted in reference to the loan itself were accurate, including by certifying and initialing "the information provided in all supporting documents and forms is true and correct in all material respects."

**Teller Law**
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

1

## IV.    Defendants were Not Eligible For Loan Forgiveness

2
3
4
5
    80.    For a substantial period before Monofrax applied for its second-draw loan, the
SBA had issued numerous guidances indicating foreign affiliates must be counted.  Monofrax
knew or should have known it was ineligible for the loan on the basis of headcount and foreign
affiliations.

6
7
8
9
10
11
    81.    Employees of all Callista or Saint-Gobain companies should have been counted
for purposes of the loan, so Monofrax had too many employees for the second draw loan, and
too many employees for forgiveness.  Monofrax was not eligible for forgiveness of its PPP loan
because its total headcount, combined with its foreign affiliates, far exceeded the maximum
allowed under the applicable eligibility rules for the program. Monofrax knew it was not
eligible when it applied for forgiveness of the loan.

12
13
14
    82.    Monofrax should have identified its excess of employees by including its foreign
affiliate employees on the loan and forgiveness applications.

15
16
    83.    Monofrax falsely certified on the forgiveness application that the information in
"all supporting documents and forms" was true.

17
18
    84.    By certifying eligibility for forgiveness, Monofrax falsely recertified its
eligibility for the loan despite the subsequent SBA clarification.

19
20
    85.    Monofrax and its affiliates exceeded the PPP employee limits when it sought
forgiveness of the PPP loan.  It was not a small business as it claimed.

21
22
23
    86.    As a result of its international affiliations, Monofrax had too many employees to
qualify for its PPP loan. The company was ineligible for the loan and therefore for loan
forgiveness.

24
25

COMPLAINT and JURY DEMAND - 18

**Teller Law**
300 Lenora St. #1471
Seattle, WA  98121
(206) 324-8969  steve@stellerlaw.com

## V.    Violations of the False Claims Act

87.    Monofrax and its affiliates had an average of more than 300 employees both prior to and at the time when it applied for its second-draw PPP loan.

88.    Monofrax should have counted its foreign affiliate employees when applying for its second-draw loan and later when it applied for forgiveness of the loan.

89.    Monofrax falsely certified loan and loan forgiveness applications by understating its true number of employees.  Had Monofrax truthfully accounted for all of its affiliated employees, the PPP loan and associated forgiveness would not have been granted.

90.    The omission of the total number of employees of the affiliated companies for purposes of forgiveness was material to the SBA, including as evidenced by the significant rules and guidance promulgated by SBA before and during the pandemic, and those related to PPP loans, as well as the space for number of employees on the forgiveness application and certification on the forgiveness application that the statements used to obtain the loan were true.

91.    Defendants violated the False Claims Act by submitting a materially false application and supporting materials in connection with a second draw PPP loan and forgiveness of this loan.

92.    They did so in order to obtain money belonging to the US government to which it was not otherwise entitled.

93.    Each of the above-described PPP loan and forgiveness applications constitute false claims.

94.    Each of the above-described PPP loan and forgiveness applications are false because they make, at a minimum, the false statements referenced below:

    a.    The number of jobs was meaningfully and falsely underreported; and

COMPLAINT and JURY DEMAND - 19

b.   The applications falsely attest to compliance with the Paycheck Protection Program and entitlement to the PPP loan and forgiveness funds.

95.     In reality, Defendant is affiliated with the other Callista and/or Saint Gobain companies as the word "affiliation" is defined and used in the relevant SBA regulations.

96.     As a result, Defendants did not qualify for the second draw PPP loan or forgiveness making each of the applications false at least insofar as each reported or attested to compliance with the PPP loan and forgiveness program rules, regulations, and laws.

## CAUSES OF ACTION
## COUNT I
### Violations of the False Claims Act: Presenting or Causing a False Claim
### (31 U.S.C. § 3729(a)(1)(A))

97.     The foregoing allegations are repeated and realleged as if fully set forth herein.

98.     The False Claims Act, 31 U.S.C. § 3729(a)(1)(A), imposes liability upon those who knowingly present, or cause to be presented, false claims for payment or approval.

99.     Defendants knowingly, recklessly and/or willfully violated the False Claims Act by presenting, or causing to be presented, false claims for payment or approval.

100.    Specifically, and as alleged in more detail above, Defendants presented, or caused to be presented, a materially false application for PPP loan funds and then for forgiveness of the resulting loan.

101.    Defendants certified compliance with applicable PPP laws, rules, and regulations despite not being compliant.

102.    Defendants similarly certified the existence of facts which were not true.

103.    Defendants knew or should have known (as defined in 31 U.S.C. § 3801(a)(5)) that the facts and certifications to which it attested were not true and that it made, presented, or submitted, or caused to be made, false or fraudulent claims for payment to the government.

COMPLAINT and JURY DEMAND - 20

104.    Each of the applications submitted or caused to be submitted by Defendants is a separate false and fraudulent claim.

105.    Defendants presented or caused to be presented these claims knowing their falsity, or in deliberate ignorance or reckless disregard that such claims were false.

106.    The United States was unaware of the foregoing circumstances and conduct of Defendants and, in reliance on said false and fraudulent claims, authorized payments to be made to or on behalf of Defendants, made such payments, and has been damaged.

107.    Because of these false or fraudulent claims submitted or caused to be submitted by Defendants, the United States has been damaged in an amount to be determined at trial.

## COUNT II
### Violations of the False Claims Act:
### Making, Using, or Causing to be Used a False Record or Statement
### (31 U.S.C. § 3729(a)(1)(B))

108.    The foregoing allegations are repeated and realleged as if fully set forth herein.

109.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(B), imposes liability upon those who knowingly make, use, or cause to be made or used, false records or statements material to a false or fraudulent claim.

110.    Defendants knowingly, recklessly and/or willfully violated the False Claims Act by making, using, or causing to be made or used, false records or statements material to false or fraudulent claims.

111.    Specifically, for purposes of obtaining or aiding to obtain a PPP loan and then forgiveness of this loan, Defendants made or presented, or caused to be made or presented, to the United States false or fraudulent applications and/or records, knowing these materials to be false or fraudulent, or acting with reckless disregard or deliberate ignorance thereof.

**Teller Law**
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

112.    Each application or record submitted to the Government in support of

Defendants' above-described false claims is a separate false record or statement and separate

violation of 31 U.S.C. § 3729(a)(1)(B).

113.    The United States was unaware of the foregoing circumstances and conduct of

Defendants and, in reliance on said false and fraudulent applications and/or records, authorized

payments to be made to or on behalf of Defendants, made such payments, and has been

damaged.

114.·    Because of these false or fraudulent statements submitted or caused to be

submitted by Defendants, the United States paid the claims, resulting in damages to the United

States in an amount to be determined at trial.

**COUNT III**
**Violations of the False Claims Act: Obligation to Repay**
**(31 U.S.C. § 3729(a)(1)(G))**

115.    The foregoing allegations are repeated and realleged as if fully set forth herein.

116.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(G), imposes liability upon those

who knowingly make, use, or cause to be made or used, false records or statements material to

an obligation to pay or transmit money or property to the government, or  conceals or

knowingly and improperly avoids or decreases an obligation to pay or transmit money or

property to the Government.

117.    Upon receipt of improperly obtained PPP loan forgiveness funds, Defendants

had an obligation to repay and refund to the Government the amounts paid by the government.

118.    Defendants knowingly, recklessly and/or willfully violated the False Claims Act

by failing to so repay or refund the monies received.

119.    The United States was unaware of the foregoing circumstances and conduct of

Defendants.

**COMPLAINT and JURY DEMAND - 22**

120.    Had the government been aware of Defendants' knowing false certifications and knowing failure to return overpayments it would have taken steps to recover them.

121.    The United States has been damaged as a result in an amount to be determined at trial.

**WHEREFORE, Relator, on behalf of himself as well as the United States requests the following relief:**

a.   A judgment against Defendants in an amount equal to all damages due to the Government, including treble damages, under the FCA;

b.   A judgment against Defendants for all civil penalties due to the Government for Defendants' violations of the FCA;

c.   That Relator recover from Defendants all costs of this action, with interest, including the cost to the Government for its expenses related to this action;

d.   That Relator recover from Defendants all reasonable attorneys' fees in bringing this action;

e.   That Relator be awarded the maximum amount of the proceeds of this action as allowed under 31 U.S.C. § 3730, and/or any other applicable provision of law;

f.   That a trial by jury be held on all issues so triable;

g.   An award of pre- and post-judgment interest; and

h.   Such other and further relief to Relator and/or the United States of America as this Court may deem just and proper.

**REQUEST FOR TRIAL BY JURY**

Relator hereby requests a trial by jury.

Dated: August 28, 2024

By:  

Stephen A. Teller, WSBA #23372
300 Lenora St. #1471
Seattle, WA  98121
Telephone:    206 324 8969
Email:    steve@stellerlaw.com
*Counsel for Plaintiff Relator*

**COMPLAINT** and **JURY DEMAND - 23**

**Teller Law**
300 Lenora St. #1471
Seattle, WA  98121
(206) 324-8969   steve@stellerlaw.com



Stephen Teller | steve@stellerlaw.com

August 28, 2024

Clerk of the Court
Patrick Healy Deputy in Charge
United States District Court
Western District of New York
Rochester Division
100 State Street, Room 2240
Rochester, NY 14614

     *Re:*    *New Civil Case – False Claims Act – **To be filed under seal***

Dear Mr. Healy:

     I enclose a Complaint for a new civil case filing, along with the Civil Cover Sheet and a check for $405 made out to the United States District Court, WDNY.

     This matter is being filed in paper format because it is a False Claims Act lawsuit. Authority for filing this matter under seal arises from statute, specifically 31 USC §3730(b)(2).

     Please call (206) 324 8969 upon receipt of these materials with any questions or concerns. I would also very much appreciate a call or email in the absence of concerns, confirming I have properly supplied the materials you need, and that the matter has been filed. My email address is steve@stellerlaw.com. My next order of business is to locate local counsel and apply for pro hac vice admission or direct admission to practice before the Court.

     I enclose a blank copy of the first page of the Complaint and a self-addressed stamped return envelope for you to conform the document with the filing stamp and case number as appropriate. I will need to inform the US Attorney and her staff of the case number and show proof of filing.

                             Sincerely,

                             Stephen Teller
                             Attorney at Law

cc:    US Attorney Trini E. Ross
       AUSA David Coriell, ACE   (via email)

24-CV-818-LJV

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| USA ex rel Foster | Monofrax LLC and Monofrax Holding GmbH |

| **(b)** County of Residence of First Listed Plaintiff _____ <br> *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant  Chautauqua County <br> *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF <br> THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* <br> Stephen Teller, Teller Law - steve@stellerlaw.com <br> 300 Lenora St., Seattle, WA  98121 | Attorneys *(If Known)* <br> unknown |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☒ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product Liability <br> ☐ 320 Assault, Libel & Slander <br> ☐ 330 Federal Employers' Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle Product Liability <br> ☐ 360 Other Personal Injury <br> ☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY** <br> ☐ 365 Personal Injury - Product Liability <br> ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability <br> ☐ 368 Asbestos Personal Injury Product Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal Property Damage <br> ☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 <br> ☐ 690 Other | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal 28 USC 157 <br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 835 Patent - Abbreviated New Drug Application <br> ☐ 840 Trademark | ☐ 375 False Claims Act <br> ☒ 376 Qui Tam (31 USC 3729(a)) <br> ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 485 Telephone Consumer Protection Act <br> ☐ 490 Cable/Sat TV <br> ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** <br> ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | **CIVIL RIGHTS** <br> ☐ 440 Other Civil Rights <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ Accommodations <br> ☐ 445 Amer. w/Disabilities - Employment <br> ☐ 446 Amer. w/Disabilities - Other <br> ☐ 448 Education | **PRISONER PETITIONS** <br> **Habeas Corpus:** <br> ☐ 463 Alien Detainee <br> ☐ 510 Motions to Vacate Sentence <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> **Other:** <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition <br> ☐ 560 Civil Detainee - Conditions of Confinement | **LABOR** <br> ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Management Relations <br> ☐ 740 Railway Labor Act <br> ☐ 751 Family and Medical Leave Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Employee Retirement Income Security Act <br> **IMMIGRATION** <br> ☐ 462 Naturalization Application <br> ☐ 465 Other Immigration Actions | **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) <br> **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff or Defendant) <br> ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts <br> ☐ 893 Environmental Matters <br> ☐ 895 Freedom of Information Act <br> ☐ 896 Arbitration <br> ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision <br> ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

| **VI. CAUSE OF ACTION** | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):* <br> 31 USC 3729 et seq (Qui Tam provisions of the False Claims Act) <br> Brief description of cause: <br> PPP loan fraud, second draw loan, foreign affiliate rules |
|---|---|

| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: <br> JURY DEMAND:  ☒ Yes  ☐ No |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | *(See instructions):* | JUDGE _____ | DOCKET NUMBER _____ |
|---|---|---|---|

| DATE <br> 08/28/2024 | SIGNATURE OF ATTORNEY OF RECORD <br> *[signature]* |
|---|---|

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

Stephen Teller
Teller Law -
300 Lenora St., Suite 1471
Seattle, WA 98121




**Retail**

U.S. POSTAGE PAID
FCM LG ENV
SEATTLE, WA 98102
AUG 28, 2024

14614

**$3.15**

RDC 99

S2324D502143-13

Clerk of the Court
Western District - NY
100 State Street #2240
Rochester NY
        14614

